UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | |
|---|---|
| In re: Robert C. Jackowiak<br>and<br>Donna M Jackowiak,<br>　　　　Debtors.<br>------------------------------------------------<br>Hardin Paving Company,<br>　　　　Plaintiff,<br>v.<br>Robert C. Jackowiak<br>and<br>Donna M. Jackowiak,<br>　　　　Defendants–Debtors. | Bankruptcy No. 09-B-70190<br>Adversary No. 09-A-96013<br>Chapter 7<br>Judge Manuel Barbosa |

### MEMORANDUM OPINION

This matter comes before the Court on an adversary proceeding brought by plaintiff Hardin Paving Company against the Debtors, seeking to declare certain amounts owing by the Debtors to the Plaintiff non-dischargeable under 11 U.S.C. § 523(a)(2)(A). For the reasons set forth herein, the Court will find in favor of the Plaintiff, solely as against defendant-debtor Donna M. Jackowiak ("Mrs. Jackowiak").

Page 1 of 11

## JURISDICTION AND PROCEDURE

The Court has jurisdiction to decide this matter pursuant to 28 U.S.C. § 1334 and Internal Operating Procedure 15(a) of the United States District Court for the Northern District of Illinois. It is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(J).

## FACTS AND BACKGROUND

The following facts and procedural history are taken from the Plaintiff's Amended Complaint, the Debtors' Answer to Amended Complaint, and from the testimony and evidence presented and admitted at the evidentiary hearing held on October 6, 2009.

Mrs. Jackowiak is the president and primary shareholder of I.Kottke & Sons, Inc. ("Kottke"). Mr. Jackowiak also works for the company. The company was originally owned by their son's parents-in-law. The son worked there for many years, and when his father-in-law became ill in 2005, he stepped in and started to help run the business. In November 2005, the parents-in-law offered to sell the company, and Mrs. Jackowiak purchased most or all of the father-in-law's shares in the company. The son had some experience from his years working at the company, but Mr. & Mrs. Jackowiak were mostly new to the construction business.

Hardin Paving Company ("Hardin") is an asphalt and concrete business, which works mostly on building parking lots and roads. Hardin hired Kottke in April 2008 as a subcontractor to do some excavating work for a parking lot project it was doing for the Village of Glen Ellyn. Under the subcontracting agreement with Hardin, Kottke had the right to hire subcontractors, but Hardin would deal directly only with Kottke. The subcontract price to Kottke for the project was $136,531, subject to some adjustment based on the actual work done. However, the son, who

did the bidding, apparently made a mistake in calculating the bid, resulting in a bid that was about $30,000 too low. The son claims that he brought the mistake in the bid to the attention of the project manager early on and was told it was alright or could be made up at the end, but the parties made no modification to the subcontracting agreement.

Pursuant to the subcontracting agreement, Hardin paid the contract price to Kottke periodically in progress payments. In order to receive a progress payment, Kottke had to submit a signed lien waiver and a contractor's affidavit. The lien waivers stated that the undersigned "waive[s] and release[s] any and all lien or claim of, or right to, lien, under the statutes of the State of Illinois, relating to mechanics' liens, with respect to and on said above-described premises, and the improvements thereon, and on the material, fixtures, apparatus or machinery furnished, and on the moneys, funds or other considerations due or to become due from [the Village of Glen Ellyn] on account of all labor, services, material, fixtures, apparatus or machinery, furnished to this date by the undersigned for the above-described premises." In the contractor's affidavit, the undersigned swore that "all waivers are true, correct and genuine and delivered unconditionally and that there is no claim either legal or equitable to defeat the validity of said waivers." It then listed "the names and addresses of all parties who have furnished material or labor, or both, for said work and all parties having contracts or sub contracts for specific portions of said work or for material entering into the construction thereof and the amount due or to become due to each, and that the items mentioned include all labor and material required to complete said work according to plans and specifications." On May 30, 2008, the Debtors' son signed a lien waiver and contractor's affidavit, and received a progress payment of $7,330.32. On June 30, 2008, Mrs. Jackowiak signed a lien waiver and contractor's affidavit,

and received a progress payment of $63,263.11. On August 1, 2008, the son signed a lien waiver and contractor's affidavit, and received a progress payment of $24,810.47. Each of these contractor's affidavits was notarized by Mr. Jackowiak, and each of them listed only the words "All material from fully paid stock and delivered in own truck" in the spot for names and addresses of subcontractors or providers of material or labor. Sometime after these three payments were made, Hardin learned that Kottke owed money to Elmhurst Chicago Stone ("Elmhurst") for materials on the project. Hardin directly paid Elmhurst $12,921.42 in September 2008, and $14,890.99 in December 2008. Although not directly obligated to pay Elmhurst, it did so to prevent Elmhurst from bringing a suit against Hardin or making a claim against the bond Hardin had posted to the Village of Glen Ellyn on the project. Hardin withheld further progress payments from Kottke, and asked for revised lien waivers including subcontractors owed money. It later turned out, that, in addition to the amount owed to Elmhurst, Kottke had owed $13,688.87 to "Welch Brothers," $781.20 to "Neenah," and $54,258.11 to "Sunset Cartage." Kottke informed Hardin of these other subcontractors in December 2008, at which point the amounts were still outstanding. Hardin paid the amount outstanding to Welch Brothers directly at some point in late 2008 or early 2009, but neither Hardin nor Kottke has paid Neenah or Sunset. Hardin claims that Sunset has asserted a mechanic's lien claim against Hardin and brought a claim against the bond that Hardin posted to the Village of Glen Ellyn for the project for the amount outstanding.

## DISCUSSION

### Section 523(a)(2)(A)

Section 523(a)(2)(A) provides a limited exception to the dischargeability for individual debtors for any debt:

> (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained, by–
> (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition....

11 U.S.C.A. § 523(a)(2) (West 2009). The party opposing discharge bears the burden of proving by a preponderance of the evidence that the debt falls within the ambit of Section 523(a)(2). NLT Title, LLC v. Foster (In re Foster), No. 09-A-00480, 2009 WL 3193526 (Bankr. N.D. Ill. Oct. 1, 2009) (citing Grogan v. Garner, 498 U.S. 279, 290 (1991)). Section 523(a)(2)(A) lists three separate grounds for dischargeability: actual fraud, false pretenses, and a false representation. Bletnitsky v. Jairath (In re Jairath), 259 B.R. 308, 314 (Bankr. N.D. Ill. 2001). To sustain a claim under Section 523(a)(2)(A) based on false representation, a creditor must establish the following elements: (1) the debtor made a false representation of fact (2) that the debtor (a) either knew to be false or made with reckless disregard for its truth and (b) made with an intent to deceive, and (3) the creditor justifiably relied on the false representation. Baker Dev. Corp. v. Mulder (In re Mulder), 307 B.R. 637, 643 (Bankr. N.D. Ill. 2004); Bednarsz v. Brzakala (In re Brzakala), 305 B.R. 705, 710 (Bankr. N.D. Ill. 2004). "Justifiable reliance is an intermediate standard, requiring less than reasonable reliance, but more than reliance in fact," and the Supreme Court has made "clear that creditors have no duty to investigate if they are not aware of a possible falsity." Goldberg v. Ojeda, No. 08-C-2808, 2009 WL 721097, at *7 (N.D. Ill. Mar.

17, 2009) (citing Field v. Mans, 516 U.S. 59, 70-74 (1995)). To prevail on a Section 523(a)(2)(A) complaint, all three elements must be established. Glucona Am., Inc. v. Ardisson (In re Ardisson), 272 B.R. 346, 357 (Bankr. N.D. Ill. 2001). Failure to establish any one fact is outcome determinative. Jairath, 259 B.R. at 314.

Here, Mrs. Jackowiak made a false representation when she signed and delivered the June 30, 2008 contractor's affidavit by swearing in writing that (i) there was no claim either legal or equitable to defeat the validity of the lien waivers, (ii) there were no parties who furnished material or labor, or both, in connection with the work done by Kottke, (iii) there were no contracts or subcontracts for the work done by Kottke or materials delivered by Kottke, (iv) there were no amounts due or to become due to any such contractors, subcontractors or furnishers of material or labor, and (v) all material delivered by Kottke was from its fully paid stock and delivered in its own truck. In connection with this contractor's affidavit, the Plaintiff made a payment of $63,236.11 to Kottke. Mrs. Jackowiak admitted at trial that there were in fact subcontractors in connection with the work performed that had not been paid at the time she signed the affidavit and that the materials delivered were not from fully paid stock. She alleges that she did not fully understand the significance of the affidavit, but admits that she understood that the Plaintiff would not have paid them if she did not sign it, and signed it in order to receive payment. The Plaintiff has therefore proven that Mrs. Jackowiak made a misrepresentation which she knew to be false, and with an intent to deceive. Both Michael Hardin, the president of the Plaintiff, and Sheri Ferrebee, the office administrator at Plaintiff in charge of payroll and accounts receivables, testified that the Plaintiff regularly relied on the lien waivers and contractor affidavits to ensure that no subcontractors might have a claim against the Plaintiff, against any of

the materials delivered to the Plaintiff or against the bond the Plaintiff posted for the project. Both testified that they did not pay subcontractors unless they received the waivers and affidavits, in part because they themselves had to deliver lien waivers to the Village of Glen Ellyn. Mr. Hardin also testified that he is familiar with lien waiver forms, and that theirs were fairly standard, and that "fully paid" would be interpreted to mean that Kottke used no subsuppliers or subcontractors, and used only its own workers. Ms. Ferrebee also testified that, for excavation work like the work done by Kottke, it is normal not to use subcontractors, and that the Plaintiff had no actual knowledge that Kottke was using subcontractors or subsuppliers. Therefore, the Plaintiff has demonstrated that the Plaintiff justifiably relied on the false representation of Mrs. Jackowiak. However, the contractor's affidavits signed in connection with the other payments by the Plaintiff were all signed by the Debtors' son. The Plaintiff has not alleged or proven that the Debtors directed their son to sign such documents. In fact, the son testified that it is normally he who signed such documents, and his mother only signed when he was out of the office. Also, although Mr. Jackowiak signed all of the contractor's affidavits, he signed them only as a notary. Therefore, there is no indication that Mr. Jackowiak was himself swearing to the substance of the affidavits. Instead, he was merely witnessing and authenticating the execution of the document, and no evidence was presented that Mr. Jackowiak made any false representation to the Plaintiff. Therefore, the only false representation made by either of the Debtors was in the June 30, 2008 contractor's affidavit signed by Mrs. Jackowiak.

The Debtors argue that the Plaintiff has not demonstrated that it was damaged by the false representation, and that the debt should not be declared non-dischargeable because the Debtors used all of the money on the project, and did not use the funds on other projects or

otherwise convert them to its own use. The Debtors gave much testimony on the fact that there was a mistake in the bid on the project which caused the bid to be too low and even below cost. While the Court is sympathetic to the Debtors' situation, it is simply not a defense to Section 523(a)(2)(A). The Debtors have not alleged that a contract was not formed, nor did Kottke seek to be excused from the contract. If the costs were ultimately higher than the contract price, that was a risk Kottke bore under the contract. Hardin had a right under the contract to demand that Kottke represent in writing that there were no unpaid subcontractors who could come after Hardin or project materials. Before giving money to Kottke, Hardin wanted to make sure that it would not become forced to spend additional funds to pay off subcontractors if Kottke failed to do so. This was not an unwarranted concern, as Hardin ultimately ended up paying over $40,000 to subcontractors in addition to the funds it distributed to Kottke, and is likely to be forced to pay even more.

Moreover, the mistaken bid and the rising costs did not justify making affirmative false representations. The Debtors cite Cripe v. Mathis (In re Mathis), 360 B.R. 662 (Bankr. C.D. Ill. 2006), for the proposition that a mere contractual breach will not support a claim under Section 523(a)(2)(A). Like the case here, In re Mathis also dealt with unpaid subcontractors, but a critical difference is that it was brought under the "actual fraud" arm of Section 523(a)(2)(A) rather than the "false representation" arm. In Mathis, the debtor promised he would use the funds to pay subcontractors, whereas here the Debtors represented that they had paid all subcontractors prior to receiving the funds (or rather, that there were no subcontractors). The difference is that a false representation is always false and was false when made, whereas a promise to do something may or may not be fulfilled. Thus, the court in Mathis held that a

breach of contract or a failure to perform a promised act could only support a claim for non-dischargeability for "actual fraud" under Section 523(a)(2)(A) with evidence that the debtor had "no intention of performance" at the time the promise was made. Mathis, at 666. In contrast, Section 523(a)(2)(A) specifically provides for false representations. The court in Mathis itself admitted that "[a] contractor's false affidavit certifying that subcontractors and materialmen have been paid and that there are no mechanic's or materialmen's liens against the property when in fact such subcontractors have not been paid" could support a complaint to deem a debt non-dischargeable under § 523(a)(2)(A), and cited a string of cases so holding. Mathis, at 667 (citing In re Dallam, 850 F.2d 446, 449 (8th Cir.1988); In re Cheek, 17 B.R. 875 (Bankr.M.D.Ga.1982); In re Lampi, 152 B.R. 543 (C.D.Ill.1993) (Tendering false lien waiver is willful and malicious injury to property rendering resulting debt non-dischargeable pursuant to 11 U.S.C. § 523(a)(6))).

Section 523(a)(2) only makes debt for money non-dischargeable to "to the extent" the money was obtained by the false representation. If the Plaintiff had known of the amounts due to subcontractors, it would have held back such amounts from its distribution to Kottke to ensure that the subcontractors got paid. However, as previously discussed, the only false representation by one of the Debtors was in connection with the June 30, 2008 affidavit and the $63,236.11 payment. From the evidence presented, it would appear that over $90,000 was due and owing to subcontractors or suppliers of materials or labor as of June 30, 2008. Therefore, had it known about such subcontractors, Hardin would have withheld the entire payment. This is further supported by the fact that Hardin was subsequently forced to pay over $40,000 directly to such subcontractors, and currently faces potential liability on the $54,000 claim by Sunset, either

directly or on an indemnification or subrogation claim which could be brought by the Village of Glen Ellyn or the provider of the bond on the project. Therefore, the Court will find that an obligation of $63,236.11 from Mrs. Jackowiak to Hardin is non-dischargeable. Additionally, the Court will find non-dischargeable the attorneys' fees and expenses in connection with defending claims brought by the subcontractors or furnishers of materials or labor, and in connection with determining the non-dischargeability of debt in this adversary proceeding. Although the Plaintiff's right to attorneys' fees arises out of a contractual provision in the Subcontract Agreement, the attorneys' fees were incurred in connection with the proceedings to find the debt non-dischargeable under Section 523(a)(2). The Supreme Court has held that Section 523(a)(2) is not limited to the actual amount transferred to the debtor in reliance on the fraud or misrepresentation. Rather, "'any debt ... for money, property, services, or ... credit, to the extent obtained by' fraud encompasses any liability arising from money, property, etc., that is fraudulently obtained, including treble damages, attorney's fees, and other relief that may exceed the value obtained by the debtor." Cohen v. de la Cruz, 523 U.S. 213, 223 (1998).

## CONCLUSION

For the foregoing reasons, the Court finds in favor of the Plaintiff and declares the obligation of $63,236.11 from Mrs. Jacckowiak to Hardin plus reasonable expenses and attorney's fees in connection therewith and provided under the subcontracting agreement to be non-dischargeable. The Plaintiff may submit a motion for determination of non-dischargeable expenses and attorneys' fees on or before December 18, 2009.

THEREFORE, IT IS ORDERED that

the foregoing constitutes findings of fact and conclusions of law as required by Fed. R. Civ. P. 52(a) and Fed. R. Bankr. P. 7052. A separate order shall be entered pursuant to Fed. R. Bankr. P. 9021 giving effect to the determinations reached herein.

DATE: November 18, 2009

The Honorable Manuel Barbosa
United States Bankruptcy Judge